Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Karena K. Ioannou
kioannou@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*Mattel, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTEL, INC., | **CIVIL ACTION No. ___** |
| *Plaintiff* | |
| v. | |
| AGOGO STORE, ALL NIGHT REVELRY STORE, BABELOVE STORE, BCAA STORE, BRILLIANT PARTY LIFE STORE, CHILDHOOD WORLD TOY STORE, CHIYOU TOY STORE, DIBAOLUN OFFICIAL STORE, DINOSAURMODEL TOY STORE, DREAMY DOLLS TOY STORE, EAMON'S PARTY STORE, EDUCATION FUN TOY STORE, FAIRYTALE WORLD STORE, FOSHAN 3C TRENDS TECHNOLOGY LTD., CO., FUJIAN FENGYU SICHUANG TRADE CO., LTD., FUNNY HOUR STORE, FUZHOU JOINED IMPORT & EXPORT CO., LTD., GUANGZHOU AMINA CRAFT CO., LTD., GUANGZHOU DADIOUS BABY CO., LTD., GUANGZHOU DONG YANG SILICONE PRODUCTS CO., LTD., GUANGZHOU DURCASE WIRELESS CO., LTD., GUANGZHOU FENQI LEATHER CO., LTD., GUANGZHOU HAIZHU DISTRICT QIQI | **COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

GARMENT FACTORY, GUANGZHOU JIANYUAN ELECTRONIC TECHNOLOGY CO., LTD., GUANGZHOU TECSNN COMPANY LTD., HAPPY BABYS STORE, HAPPYFESTDU STORE, HENAN CHAO LIU INDUSTRIAL CO., LTD., HENAN RAINCOMING IMPORT AND EXPORT TRADING CO., LTD., KOPTUR STORE, LILIAHE OFFICIAL STORE, MAGICAL PARTY STORE, MAGICTOYWORLD STORE, MATTELS TOY STORE, MATTELS TOY WORLD STORE, MOOMBAR STORE, MUZI ANIME TOY STORE, NAN 'AN MEISHAN TOWN XINGCAI EMBROIDERY FACTORY, NINGBO TONSIN CRAFTS COMPANY LIMITED, NINGRUI (XIAMEN) TRIMMINGS CO., LTD., PLAYJOY STORE, QUANZHOU HAPPY BROTHERS TRADING CO., LTD., QUANZHOU YAER ELECTRONIC COMMERCE CO., LTD., SHANTOU CHENGHAI HUIYE TOY CO., LTD., SHANTOU CHENGHAI XTH TOYS CO., LTD., SHENZHEN DINGTU ELECTRONIC TECHNOLOGY CO., LTD., SHENZHEN DONGYUAN PLASTIC & METAL PRODUCTS MANUFACTURER, SHENZHEN FANJIN ELECTRONIC COMMERCE CO., LTD., SHENZHEN HMT TECHNOLOGY LTD., CO., SHENZHEN HUIHUAN TRADE DEVELOPMENT CO., LTD., SHENZHEN LANDFUL TEXTILE & TRADING CO., LTD., SHENZHEN LINGRUIYI TECHNOLOGY DEVELOPMENT CO., LTD., SHENZHEN MIDCASE TECHNOLOGY CO., LTD., SHENZHEN TIANYIJIAN TECHNOLOGY CO., LTD., SHENZHEN TOMSAN TECHNOLOGY CO., LTD., SHENZHEN ZERY TRADE CO., LTD., SHOP910336018 STORE, SIGADE TOY STORE, SIMCASTLE STORE, SMARTOY STORE, SO SO BEAUTIFUL TOY STORE, TIK TOK STORE, TOBAY TOY STORE, YIWU CUMAI ELECTRONIC COMMERCE CO., LTD., YIWU EASTGATE TRADING CO., LTD., YIWU F AND J JEWELRY CO., LTD., YIWU JINGUI TRADING CO., LTD., YIWU LONGLUU IMP AND EXP FIRM, YIWU MAOKAI IMPORT & EXPORT CO., LTD., YIWU YAFEINI JEWELRY CO., LTD., YIWU YUNBU IMPORT AND EXPORT CO., LTD., YIWU YUYUN TRADING CO., LTD., ZHOUKOU ZHENYA ARTS AND CRAFTS CO., LTD. and

ZIBO HONGBANG INTERNATIONAL TRADE CO., LTD.,

*Defendants*

## GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Mattel** | Mattel, Inc. |
| **Defendants** | Agogo Store, All Night Revelry Store, Babelove Store, BCAA Store, Brilliant Party Life Store, Childhood world toy Store, ChiYou Toy Store, DIBAOLUN Official Store, DinosaurModel Toy Store, Dreamy Dolls Toy Store, Eamon's party Store, Education Fun Toy Store, Fairytale world Store, Foshan 3C Trends Technology Ltd., Co., Fujian Fengyu Sichuang Trade Co., Ltd., Funny Hour Store, Fuzhou Joined Import & Export Co., Ltd., Guangzhou Amina Craft Co., Ltd., Guangzhou Dadious Baby Co., Ltd., Guangzhou Dong Yang Silicone Products Co., Ltd., Guangzhou Durcase Wireless Co., Ltd., Guangzhou Fenqi Leather Co., Ltd., Guangzhou Haizhu District Qiqi Garment Factory, Guangzhou Jianyuan Electronic Technology Co., Ltd., Guangzhou Tecsnn Company Ltd., Happy babys Store, HAPPYFESTDU Store, Henan Chao Liu Industrial Co., Ltd., Henan Raincoming Import And Export Trading Co., Ltd., Koptur Store, Liliahe Official Store, Magical Party Store, MagicToyWorld Store, Mattels Toy Store, Mattels Toy World Store, Moombar Store, MUZI Anime Toy Store, Nan 'an Meishan Town Xingcai Embroidery Factory, Ningbo Tonsin Crafts Company Limited, Ningrui (Xiamen) Trimmings Co., Ltd., PLAYJOY Store, Quanzhou Happy Brothers Trading Co., Ltd., Quanzhou Yaer Electronic Commerce Co., Ltd., Shantou Chenghai Huiye Toy Co., Ltd., Shantou Chenghai XTH Toys Co., Ltd., Shenzhen Dingtu Electronic Technology Co., Ltd., Shenzhen Dongyuan Plastic & Metal Products Manufacturer, Shenzhen Fanjin Electronic Commerce Co., Ltd., Shenzhen Hmt Technology Ltd., Co., Shenzhen Huihuan Trade Development Co., Ltd., Shenzhen Landful Textile & Trading Co., Ltd., Shenzhen Lingruiyi Technology Development Co., Ltd., Shenzhen Midcase Technology Co., Ltd., Shenzhen Tianyijian Technology Co., Ltd., Shenzhen Tomsan Technology Co., Ltd., Shenzhen Zery Trade Co., Ltd., Shop910336018 Store, Sigade Toy Store, SimCastle Store, SMARTOY Store, So So Beautiful Toy Store, TIK TOK Store, Tobay Toy Store, Yiwu Cumai Electronic Commerce Co., Ltd., Yiwu Eastgate Trading Co., Ltd., Yiwu F And J Jewelry Co., Ltd., |

|  | Yiwu Jingui Trading Co., Ltd., Yiwu Longluu Imp And Exp Firm, Yiwu Maokai Import & Export Co., Ltd., Yiwu Yafeini Jewelry Co., Ltd., Yiwu Yunbu Import And Export Co., Ltd., Yiwu Yuyun Trading Co., Ltd., Zhoukou Zhenya Arts And Crafts Co., Ltd. and Zibo Hongbang International Trade Co., Ltd. |
|---|---|
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Delanty Dec.** | Declaration of Lisa Delanty in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Barbie** | An iconic and world-renowned fashion doll |
| **Barbie Products** | A vast range of commercial products including dolls, playhouses, toy cars, books, movies, games, puzzles and clothing sold under the Barbie brand |
| **Barbie Marks** | U.S. Trademark Registration Nos.: 689,055 for "BARBIE" for a variety of goods in Class 28; 2,678,386 for "BARBIE" for a variety of goods in Classes 3, 6, 8, 9, 11, 12, 14, 16, 18, 20, 21, 24, 25, 26, |

iv

|  | 27, 28 and 30; 2,087,842 for "_Barbie_" for a variety of goods in Class 28; 2,639,971 for "_Barbie_" for a variety of goods in Class 25 and 28; 774,892 for "SKIPPER" for a variety of goods in Class 28; 2,931,614 for "CHELSEA" for a variety of goods in Class 28; 3,083,593 for "BARBIE COLLECTOR" for a variety of goods in Classes 28 and 41; 3,189,837 for "PINK LABEL" for a variety of goods in Class 28; 3,702,525 for "FASHIONISTAS" for goods in Class 28; 5,214,711 for "YOU CAN BE ANYTHING" for a variety of goods in Class 28; 5,233,292 for "BARBIE DREAMTOPIA" for a variety of goods in Class 28; 5,449,612 for "BABYSITTERS INC." for a variety of goods in Class 28; 6,097,805 for "COLOR REVEAL" for a variety of goods in Class 28; and 898,209 for "**MATTEL**" for a variety of goods in Class 28 |
|---|---|
| **Barbie Works** | U.S. Copyright Reg. Nos.: VA 2-038-351, covering the 2017 Barbie Packaging Branding for Consumer Products; VA 2-135-686, covering the 2016 Catalog Fall Mattel; and VA 945-179 covering CEO BARBIE |
| **Counterfeit Products** | Products bearing or used in connection with the Barbie Marks and/or Barbie Works, and/or products in packaging and/or containing labels bearing the Barbie Marks and/or Barbie Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Barbie Marks and/or Barbie Works and/or products that are identical or confusingly or substantially similar to the Barbie Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba, AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with |

| | |
|---|---|
| | any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba, AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff, a corporation organized and existing under the laws of the State of Delaware, by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.     This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. and related state and common law claims, arising from the infringement of the Barbie Marks and/or Barbie Works, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Barbie Products by Defendants.

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.     Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.     Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using

their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

      c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

      d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

      e.    Upon information and belief, Defendants are aware of Plaintiff, its Barbie Products, Barbie Marks and Barbie Works are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.      Mattel, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 333 Continental Boulevard, TWR 15-1, El Segundo, CA 90245.

6.      Upon information and belief, Defendants are merchants on the Alibaba and/or AliExpress online marketplace platforms, through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the screenshots of Defendants' Merchant Storefronts in **Exhibit D**.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Barbie Products

7.     Mattel, through its family of companies, is a leading designer, developer, marketer, manufacturer and distributor of well-known children's toys and games under its iconic brands, including, but not limited to: Barbie, UNO, Thomas & Friends, Hot Wheels, American Girl and Fisher-Price.

8.     Mattel sells its Mattel Products worldwide through major retailers, quality toy stores and online marketplaces, including, but not limited to: Wal-Mart, Target Stores, Walgreens, Amazon and many others.

9.     One of Mattel's most popular and successful brands is Barbie, an iconic and world-renowned fashion doll.

10.     Barbie was created in the late 1950's by Ruth Handler after recognizing that her daughter Barbara had limited choices of toys to play with, unlike her son Ken.  For example, Ken had toys with which he could imagine himself as a firefighter, an astronaut, a cowboy and a doctor, among other things.  Girls, on the other hand, were mostly playing with bits of cardboard in the form of paper dolls used to express fashion play, or baby dolls with which they could imagine themselves as a mother or caregiver.   There was no such thing as a three-dimensional fashion doll. Ruth came to realize that there was a market for such a doll with which girls could play with fashion and dream of growing up.

11.     Barbie was first introduced at the American International Toy Fair in New York on March 9, 1959, a date which has since become recognized by Mattel as being Barbie's birthday.[2]

12.     However, at the Toy Fair that year, Barbie was not a hit.  The toy buyers, who at the

---

[2] Contance Gibb, *8 fun facts about Barbara Millicent Roberts on Barbie Day*, New York Daily News (Mar. 9, 2017), https://www.nydailynews.com/life-style/march-9-barbie-day-8-facts-barbara-millicent-roberts-article-1.2992330.

time were mostly men, generally did not know what to make of a fashion doll in the form of an adult woman for children.  Still, Ruth understood that when the doll got into girls' hands, they would see the doll as a platform for imaginative play.  Ultimately, when girls saw the first commercial for Barbie, orders for the doll went through the roof, to the point where Mattel could not manufacture enough dolls to keep up with the demand.

13.     The Barbie doll soon became famous around the world, dramatically impacting the way that children interacted with dolls and the Barbie brand has since expanded to a vast range of commercial products, including, but not limited to, playhouses, toy cars, books, movies, games, puzzles and clothing.  Sample Barbie Products are attached hereto as **Exhibit A** and incorporated herein by reference.

14.     During the first year of production, approximately 300,000 original Barbie dolls were sold.  To date, more than one billion Barbie brand dolls alone have been sold across 150 different countries, as well as additional sales of non-toy Barbie Products in over 45 categories.  Total annual sales under the Barbie brand are more than a billion dollars, with much of that revenue stemming from sales of Barbie Products other than toys.

15.     The impact of the Barbie brand has reached heights and received honors rarely seen in the toy world.  For example, Barbie has appeared in films, including the *Toy Story* franchise,[3] has had a section of Times Square briefly renamed "Barbie Boulevard" in 1974, has been depicted in a painting by the artist Andy Warhol,[4] has landed the cover of *Time Magazine*[5] and is part of the Smithsonian Institution's collection in the National Museum of American History.[6]

---

[3] Toy Story 2 (Walt Disney Pictures 1999); Toy Story 3 (Walt Disney Pictures 2010).
[4] Hannah Moore, *Why Warhol painted Barbie*, BBC (Oct. 1, 2015), https://www.bbc.com/news/magazine-34407991.
[5] *INSIDE THE BIGGEST CHANGE IN BARBIE'S 57-YEAR HISTORY- AND WHAT IT SAYS ABOUT AMERICAN BEAUTY DEALS,* TIME, http://time.com/barbie-new-body-cover-story/.
[6] Smithsonian Institution, https://www.si.edu/object/nmah_1155897 (last visited Dec. 10, 2018)

16.    Most recently and notably, Barbie was named the Top Global Toy Property of the Year for the second consecutive year by NPD Group.[7]

17.    While Mattel has gained significant common law trademark and other rights in the Barbie brand through use, advertising, and promotion, Mattel has also protected these valuable rights by filing for and obtaining federal trademark registrations.

18.    Mattel, is the owner of a number of US Trademark Registrations for BARBIE or BARBIE formative marks, including but not limited to U.S. Trademark Reg. Nos.: 689,055 for "BARBIE" for a variety of goods in Class 28; 2,678,386 for "BARBIE" for a variety of goods in Classes 3, 6, 8, 9, 11, 12, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28 and 30; 2,087,842 for " *Barbie* " for a variety of goods in Class 28; 2,639,971 for " *Barbie* " for a variety of goods in Class 25 and 28; 774,892 for "SKIPPER" for a variety of goods in Class 28; 2,931,614 for "CHELSEA" for a variety of goods in Class 28; 3,083,593 for "BARBIE COLLECTOR" for a variety of goods in Classes 28 and 41; 3,189,837 for "PINK LABEL" for a variety of goods in Class 28; 3,702,525 for "FASHIONISTAS" for goods in Class 28; 5,214,711 for "YOU CAN BE ANYTHING" for a variety of goods in Class 28; 5,233,292 for "BARBIE DREAMTOPIA" for a variety of goods in Class 28; 5,449,612 for "BABYSITTERS INC." for a variety of goods in Class 28; 6,097,805 for "COLOR REVEAL" for a variety of goods in Class 28; and 898,209 for " MATTEL " for a variety of goods in Class 28.  True and correct copies of the registration certificates for the Barbie Marks

---

[7] *See* BUSINESS WIRE, *Barbie Named 2020 Top Global Toy Property of the Year, Per NPD* (Jan. 27, 2021), https://www.businesswire.com/news/home/20210127005559/en/; Toy News, *Barbie named 2021 top global toy property of the year*, Tessa Clayton (Feb. 7, 2022), https://www.toynews-online.biz/2022/02/07/barbie-named-2021-top-global-toy-property-of-the-year/.

are attached hereto as **Exhibit B** and incorporated herein by reference.

19.   The Barbie Marks are currently in use in commerce in connection with Barbie Products. The Barbie Marks were first used in commerce on or before the date of first use as reflected in the registrations attached hereto as **Exhibit B**.

20.   The Barbie Marks are valid, subsisting and incontestable.

21.   In addition, Mattel is also the owner of both registered and unregistered copyrights in and related to the Barbie Products.

22.   For example, Mattel is the owner of U.S. Copyright Registrations for Barbie brand designs and imagery, including but not limited to U.S. Copyright Reg. Nos.: VA 2-038-351, covering the 2017 Barbie Packaging Branding for Consumer Products; VA 2-135-686, covering the 2016 Catalog Fall Mattel; and VA 945-179 covering CEO BARBIE.  True and correct copies of the U.S. Copyright registration certificates for the Barbie Works are attached hereto as **Exhibit C** and incorporated herein by reference.

23.   The success of the Barbie brand is due in part to Mattel's marketing and promotional efforts.  These efforts include advertising and promotion through television, Mattel's website, retailer websites, print and internet-based advertising and placement of the Barbie Products at dozens of authorized major retail outlets, both domestically and abroad, including New York.

24.   The success of the Barbie brand is also due to its use of highest quality designs, materials and processes in making the Barbie Products.

25.   Additionally, Mattel owes a substantial amount of the success of the Barbie Products to its consumers and word-of-mouth buzz that its consumers have generated, including through events featuring Barbie Products, such as events at Mudec's Museo delle Culture in Milan, Italy,[8]

---

[8] Mudec Museo delle Culture, *Calling her a doll would be belittling. Barbie is a global icon, who in her 56 years of life manages to knock down every linguistic, cultural, social, and anthropological barrier.* (last visited Jan. 27, 2021),

as well as meetups for fans.

26.   The Barbie brand's popularity extends even into the internet and social media, as, for example, the Barbie brand Instagram account, @barbiestyle, currently has over 2.2 million followers.[9]  Additionally, the Barbie channel on YouTube has over 2 billion views.[10]

27.   While the largest market for Barbie dolls is girls ages 3 to 11, there is also a large market of adult collectors.  For example, the Barbie National Convention in the U.S. began in New York City in 1980 and Mattel estimates that there are eight million active collectors of Barbie dolls, primarily adults.

28.   Mattel's efforts, the quality of Mattel's Barbie Products, and the word-of-mouth buzz generated by its consumers have made the Barbie Marks, Barbie Works and Barbie Products prominently placed in the minds of the public.  The Barbie brand has achieved near universal recognition among the general consuming public in the U.S., and members of the public and retailers have become familiar with Mattel's Barbie Marks, Barbie Works and Barbie Products, and have come to associate them exclusively with Mattel.

29.   As recently as 2010, research conducted by Mattel among more than 1,800 participants showed that awareness of the Barbie brand among U.S. girls ages 5 – 10 is as high as 98% and 99% among their mothers.  Mattel has acquired a valuable reputation and goodwill among the public as a result of such association.

30.   In addition, in 1991 the U.S. Court of Appeals for the Second Circuit recognized that Barbie is the best-selling toy doll in the world,[11] and in 1998, now-Justice Sonia Sotomayor wrote

---

http://www.mudec.it/eng/barbie/.
[9] @barbiestyle, Instagram, https://www.instagram.com/barbiestyle/ (last visited Jan. 27, 2021).
[10] Barbie Channel, YouTube, https://www.youtube.com/user/barbie (last visited Jan. 27, 2021).
[11] *Miss America Organization v. Mattel, Inc.*, 945 F.2d 536, 537 (2d Cir. 1991).

that "by any measure – the world-known BARBIE is a 'famous' trademark under the Federal Anti-Dilution Act."[12]

31.   Mattel has gone to great lengths to protect its interests in the Barbie Products, Barbie Marks and Barbie Works. No one other than Mattel and its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Barbie Marks or Barbie Works, or use the Barbie Marks or Barbie Works in connection with goods or services or otherwise, without the express permission of Mattel.

### Alibaba, AliExpress and Defendants' User Accounts

32.   Alibaba and AliExpress are online marketplace and e-commerce platforms which allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell and ship their wholesale and retail products originating from China to consumers worldwide and specifically to consumers residing in the U.S., including New York.

33.   As some of the leaders of China's e-commerce and digital retail market, Alibaba and AliExpress have generated hundreds of billions in sales worldwide.[13]   International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress. For example, in 2016, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[14]   The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[15]   Additionally, according to *Business Insider*,

---

[12] *Mattel, Inc. v. Jcom, Inc.*, 1998 U.S. Dist. LEXIS 16195, *9 (S.D.N.Y. Sep. 10, 1998).

[13] *See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, Forbes (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

[14] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* Digitalcommerce360.com (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.

[15] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China,* Digitalcommerce360.com (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day. [16] In 2021, Alibaba set a new Singles Day record with $84.5 billion in sales across the eleven (11) day event.[17]

34.     As addressed in the *Wall Street Journal*, *Fortune* and the *New York Times*,[18] and as reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on Alibaba and AliExpress,[19] an astronomical number of counterfeit and infringing products are offered for sale and sold on Alibaba and AliExpress, as well as other online marketplace platforms, at a rampant rate.

35.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and Merchant Storefronts on Alibaba and/or AliExpress as well as potential yet undiscovered additional online marketplace platforms.

36.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located

---

[16] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, Business Insider (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[17] Dan Berthiaume, *Alibaba sets new Singles Day record with $84.5 billion in sales*, CHAIN STORE AGE (Nov. 11, 2021), https://chainstoreage.com/alibaba-sets-new-singles-day-record-845-billion-sales.

[18] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, Wall Street Journal (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, Fortune (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group*, Wall Street Journal (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes*, The New York Times (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[19] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba*, MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

in the U.S., including New York, and throughout the world.

37.   Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

38.   Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

## **Defendants' Wrongful and Infringing Conduct**

39.   Particularly in light of Plaintiff's success with its Barbie Products, as well as the reputation they have gained, Plaintiff and its Barbie Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Barbie Products, Barbie Marks and Barbie Works, and Plaintiff investigates and enforces against such activities.

40.   Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts.  Screenshots of Infringing Listings from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit D** attached hereto and incorporated herein by reference.

41.   Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Barbie Products or to use the Barbie Marks or

Barbie Works, or any marks and/or artwork that are confusingly or substantially similar to the Barbie Marks or Barbie Works.

42.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Barbie Products, only with minor variations that no ordinary consumer would recognize.

43.     During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit D**.

44.     Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit D**.

45.     For example, below on the left is an image of one of Plaintiff's Barbie Products. Depicted further below is a listing for Defendant ChiYou Toy Store's Counterfeit Product ("ChiYou Toy Store Infringing Listing" and "ChiYou Toy Store Counterfeit Product," respectively). The ChiYou Toy Store Infringing Listing appears on Defendant's Merchant Storefront, https://www.aliexpress.com/store/3155045, and offers the ChiYou Toy Store Counterfeit Product for $24.97 per item, using, featuring and/or incorporating one or more of the

Barbie Marks and/or Barbie Works and/or confusingly or substantially similar marks and/or artworks in the listing title "Original **Barbie** Sports Occupation Doll **Barbie** Climber Skateboarder Softball Karate Doll Girls Toys All joints Movable GJL73" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the ChiYou Toy Store Counterfeit Product is virtually identical to one of Plaintiff's Barbie Products and features and/or incorporates one or more of the Barbie Marks and/or Barbie Works. There is no question that the ChiYou Toy Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Barbie Products or that the ChiYou Toy Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Barbie Marks and Barbie Works:

<table>
<tr><td><strong><u>Barbie Product</u></strong></td><td><strong><u>Defendant's Counterfeit Product</u></strong></td></tr>
<tr><td></td><td></td></tr>
</table>

46.     By way of another example, below on the left is an image of one of Plaintiff's Barbie Products. Depicted further below is a listing for Defendant MagicToyWorld Store's Counterfeit Product ("MagicToyWorld Store Infringing Listing" and "MagicToyWorld Store Counterfeit

Product," respectively).   The MagicToyWorld Store Infringing Listing appears on Defendant MagicToyWorld Store's Merchant Storefront, https://www.aliexpress.com/store/5794795, and offers MagicToyWorld Store Counterfeit Product for $20.66 per item, using, featuring and/or incorporating one or more of the Barbie Marks and/or Barbie Works and/or confusingly or substantially similar marks and/or artwork in the title description "NEW Original **Barbie** Sports Doll Made to Move Gymnastics Yoga Dolls with 22 Flexible Joints Girls Toys for Kids Brinquedos Toys" (emphasis added) and in the descriptions and/or product images in the body of the listing.   Further, MagicToyWorld Store Counterfeit Product is virtually identical to one of Plaintiff's Barbie Products and features and/or incorporates one or more of the Barbie Marks and/or Barbie Works.   There is no question that MagicToyWorld Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Barbie Products or that MagicToyWorld Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Barbie Marks and Barbie Works:

| **Barbie Product** | **Defendant's Counterfeit Product** |
|:---:|:---:|




14

47.     As another example, below on the left is an image of one of Plaintiff's Barbie Products.  Depicted further below is a listing for Defendant Agogo Store's Counterfeit Product ("Agogo Store Infringing Listing" and "Agogo Store Counterfeit Product," respectively).  The Agogo Store Infringing Listing appears on Defendant Agogo Store's Merchant Storefront, https://www.aliexpress.com/store/5068471, and offers the Agogo Store Counterfeit Product for $68.21 per item, using, featuring and/or incorporating one or more of the Barbie Marks and/or Barbie Works and/or confusingly or substantially similar marks and/or artwork in the title description "Original **Barbie** Extra Dolls Fashionista Princess Clothes for Barbie Accessories Bjd Kids Girl Toys for Children Birthday Gift" (emphasis added) and in the descriptions and/or product images in the body of the listing.  Further, the Agogo Store Counterfeit Product is virtually identical to one of Plaintiff's Barbie Products and features and/or incorporates one or more of the Barbie Marks and/or Barbie Works.  There is no question that the Agogo Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Barbie Products or that the Agogo Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Barbie Marks and Barbie Works:

| **Barbie Product** | **Defendant's Counterfeit Product** |
|---|---|




48.    By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Barbie Marks and Barbie Works, and have used marks and/or artwork that are confusingly or substantially similar to, identical to and/or constitute counterfeiting and/or infringement of the Barbie Marks and Barbie Works in order to confuse consumers into believing that such Counterfeit Products are the Barbie Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Barbie Marks and Barbie Works, after Plaintiff filed for and obtained federal registrations in the Barbie Marks and Barbie Works, as alleged above, and after Plaintiff's Barbie Products, Barbie Marks and Barbie Works became well-known to the purchasing public.

49.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Barbie Marks and Barbie Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Barbie Products, and in bad faith adopted the Barbie Marks and Barbie Works.

50.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Barbie Marks, Barbie Works and Barbie Products.

51.    Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are

licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

52.      By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Barbie Marks and Barbie Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

53.      Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

54.      Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55.      Plaintiff is the exclusive owner of all right and title to the Barbie Marks.

56.      Plaintiff has continuously used the Barbie Marks in interstate commerce since on or before the date of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

57.      Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Barbie Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Barbie Marks and/or used spurious designations that are identical with, or indistinguishable from, the Barbie Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

58.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Barbie Marks through their participation in such activities.

59.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Barbie Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

60.     Defendants' unauthorized use of the Barbie Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Barbie Marks.

61.     Defendants' actions constitute willful counterfeiting of the Barbie Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

62.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff,

its business, its reputation and its valuable rights in and to the Barbie Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Barbie Marks.

63.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.


### SECOND CAUSE OF ACTION
### (Infringement of Registered Trademark)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

64.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

65.     Plaintiff has continuously used the Barbie Marks in interstate commerce since on or before the date of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

66.     Plaintiff, as owner of all right, title and interest in and to the Barbie Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

67.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Barbie Marks.

68.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Barbie Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Barbie Products and/or related products bearing the Barbie Marks into the stream of commerce.

69.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Barbie Marks and/or which are identical or confusingly similar to the Barbie Marks.

70.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Barbie Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

71.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Barbie Marks.

72.     Defendants' egregious and intentional use of the Barbie Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Barbie Products or are otherwise associated with, or authorized by, Plaintiff.

73.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Barbie Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

74.     Defendants' continued, knowing, and intentional use of the Barbie Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Barbie Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

75.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Barbie Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Barbie Marks.

76.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

77.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

78.     Plaintiff, as the owner of all right, title and interest in and to the Barbie Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

79.     The Barbie Marks are inherently distinctive and/or have acquired distinctiveness.

80.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Barbie Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Barbie Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Barbie Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

81.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Barbie Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Barbie Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Barbie Products and did in fact induce, and intend to, and will

continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Barbie Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

82. Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Barbie Marks would cause confusion, mistake or deception among purchasers, users and the public.

83. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Barbie Products and Barbie Marks.

84. As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Barbie Products and by depriving Plaintiff of the value of its Barbie Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Barbie Marks.

85. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof,

23

enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Federal Copyright Infringement)**
**[17 U.S.C. § 501(a)]**

86.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

87.     Plaintiff is the exclusive owner of the Barbie Works.

88.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Barbie Works.

89.     Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Barbie Products and/or Barbie Works.

90.     Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Barbie Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products which bear such Barbie Works, or artwork that is, at a minimum, substantially similar to the Barbie Friends Works.

91.     Defendants' unlawful and willful actions as alleged herein constitute infringement of the Barbie Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Barbie Works in violation of 17 U.S.C. § 501(a).

92.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

93.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

94.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

95.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Barbie Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

96.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

97.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or

otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

98.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

99.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Barbie Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Barbie Marks as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

100.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater,

pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Barbie Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Barbie Works under 17 U.S.C. § 501(a);

F.      In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the Barbie Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright

infringement, which Plaintiff may elect prior to the rendering of final judgment;

G.      For an award of damages to be proven at trial for common law unfair competition;

H.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    ii.   directly or indirectly infringing in any manner Plaintiff's Barbie Marks and Barbie Works;

    iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Barbie Marks and Barbie Works to identify any goods or services not authorized by Plaintiff;

    iv.   using Plaintiff's Barbie Marks or Barbie Works or any other marks or artwork that are confusingly or substantially similar to the Barbie Marks and Barbie Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or

association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix. from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x. from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise

avoiding the prohibitions set forth in any final judgment or order in this action;

xii.  providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.  instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

I.  For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe Plaintiff's Barbie Marks or Barbie Works, or bear any marks or artwork that are confusingly or substantially similar to the Barbie Marks and Barbie Works;

J.  For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe Plaintiff's Barbie Marks or Barbie Works, or bear any marks or artwork that are confusingly or substantially similar to the Barbie Marks or Barbie Works pursuant to 15 U.S.C. § 1118;

K.  For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

L.       For an order from the Court that an asset freeze or constructive trust be imposed over

any and all monies, profits, gains and advantages in Defendants' possession which rightfully

belong to Plaintiff;

M.       For an award of exemplary or punitive damages in an amount to be determined by the

Court;

N.       For Plaintiff's reasonable attorneys' fees;

O.       For all costs of suit; and

P.       For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: March 24, 2022                                   Respectfully submitted,

                                                        EPSTEIN DRANGEL LLP

                                        BY:     _____
                                                Gabriela N. Nastasi
                                                gnastasi@ipcounselors.com
                                                Jason M. Drangel (JD 7204)
                                                jdrangel@ipcounselors.com
                                                Ashly E. Sands (AS 7715)
                                                asands@ipcounselors.com
                                                Danielle S. Futterman (DY 4228)
                                                dfutterman@ipcounselors.com
                                                Karena K. Ioannou
                                                kioannou@ipcounselors.com
                                                60 East 42nd Street, Suite 2520
                                                New York, NY 10165
                                                Telephone:     (212) 292-5390
                                                Facsimile:     (212) 292-5391
                                                *Attorneys for Plaintiff*
                                                *Mattel, Inc.*